Judgment reversed and cause remanded for a new trial, and the remittitur ordered to issue forthwith.

---

## MAINE  BOYS'  TUNNEL  COMPANY  *v.*  BOSTON TUNNEL  COMPANY.

NEW TRIAL—CONFLICT OF EVIDENCE.—This Court, on review of the proper motion made in the Court below and there denied, will order a new trial where the evidence given at the former trial was, without substantial conflict, opposed to the verdict.

INSTRUCTION—ESTOPPEL.—On the trial of an action for the alleged trespass of defendants on the plaintiffs' mining claim, in which the title to the *locus in quo* constituted the main issue, the Court gave the following instruction to the jury, viz : " If the jury believe from the evidence that plaintiffs,  *  *  *  more than five years prior to the commencement of this suit, in good faith, and under a claim of right, entered into the possession of said disputed ground, and have continued in possession thereof, and expended labor thereon, (with the knowledge of defendants  *  *  *  they making no objections thereto,) and that defendants

have not forbidden plaintiff's possession so acquired, then the plaintiff is entitled to a verdict." *Held,* that this instruction, as an abstract proposition, fails to state the essential elements of an estoppel *in pais,* and was improperly given.

IDEM—POSSESSION OF MINING CLAIM.—In such case, where it appeared that the boundary line between the plaintiff's and defendant's mining claims had been in dispute for several years—the *locus in quo* being embraced between the adverse lines claimed by the parties respectively—the Court refused the defendant's request to give to the jury the following instruction, to wit : " Where two mining companies take up adjoining claims, and the one last taken up overlaps the other, and neither company is working that portion of the claim which overlaps the other, but are working in different portions of their respective claims, the fact that the locators of the last claim located have been in possession of their claim for five years, does not divest the owners of the first claim of the right to their claim to the extent of the original boundaries, and such a possession by the locators of the last claim located is not adverse to the possession of those who located the first claim." *Held,* that the instruction correctly declared the law, and, in view of the fact that plaintiff's said instruction had been given, the Court erred in refusing it.

APPEAL from the District Court, Fifth Judicial District, Tuolumne County.

The following are the material portions of plaintiff's complaint, to wit :

" And the plaintiffs aver that they are and have been a corporation formed under the laws of this State, doing business in said county [Tuolumne] since the 3d day of September, A. D. 1858; and that the said defendant, Boston Tunnel Company, is a corporation, formed under the laws of this State, and doing business in said county since the 19th day of June, A. D. 1858.

" And the said plaintiffs aver that since the 18th day of January, A. D. 1855, they and those under whom they claim have been the owners of, and except as hereinafter set forth and complained against, entitled to and been in the quiet and peaceable possession of the following described piece of mining ground, being situated on Table Mountain, near Scraperville or Jeffersonville: Commencing at a tree—the corner of the Welsh Boys' claim—said tree being the south-

west corner of plaintiffs' ground; thence along the Welsh Boys' line across the mountain to the east side thereof; thence along the east side of said mountain in a north direction seventeen hundred feet to a pile of stones, the northeast corner of said claim; thence in a direct line across the mountain to its base, to an oak tree, the northwest corner; thence in a southwesterly direction down the mountain to the place of beginning.

"That plaintiffs, since the 3d day of September, 1858, have been the owners of said ground for mining purposes, and except as herein complained against, have been and still are entitled to the quiet and peaceable possession of said ground, without let or hinderance from any one. * * * And the said plaintiffs aver that the defendants are the owners of the mining claim immediately north of the boundary of plaintiffs' claim.

" And the said plaintiffs aver that the defendants, since the 1st day of June, A. D. 1866, and on divers days from thence down to the present time, have wrongfully and unlawfully, and against the will of plaintiffs, entered in and upon plaintiffs' said ground, by means of an underground tunnel, commencing on defendant's ground, and have mined out a large portion of plaintiffs' ground, and extracted the gold therefrom, amounting, as plaintiffs aver and charge, to the sum of, to wit: one thousand dollars. And the plaintiffs aver that said acts of defendants have been confined to two hundred and sixty feet off of the north portion of plaintiffs' said claim. And the said plaintiffs aver that said defendants say and threaten that they will continue and mine out and extract the gold from said two hundred and sixty feet of said claim. Wherefore said plaintiffs pray judgment against said defendants for the damages so as aforesaid sustained, to wit: for the sum of one thousand dollars, the value of the gold taken from said claim as aforesaid by defendants; and that a receiver be appointed to take charge of the gold which may be taken from said claim, or that portion thereof above described, pending this litigation, and that defendants be

evicted therefrom.    And plaintiffs pray such other relief as the matters of the case may demand."

The cause was tried before the Court with a jury.    The plaintiff had verdict and judgment.    The defendant moved for a new trial on the grounds, among others, that the verdict was contrary to the evidence, and for errors in law occurring at the trial, and excepted to by the defendant.    The Court denied the motion, and the defendant appealed from the judgment and the order denying a new trial.

The other facts are stated in the opinion of the Court.

*Caleb Dorsey*, for Appellant.

*H. P. Barber*, for Respondent.

By the Court, SPRAGUE, J.:

This is an action for an alleged trespass of defendant upon the mining claim of plaintiff.

The only controverted question of fact, upon the trial, seems to have been whether the *locus in quo* of the alleged trespass is within the boundaries of plaintiff's claim.

Upon a careful review of the whole testimony, we have not been able to discern any substantial conflict in the evidence tending to establish the following preliminary facts, upon which this ultimate fact depends:

Early in the month of January, 1855, defendant's grantors located, by marking out and establishing the four corners, and commenced work upon, a certain piece of mining ground, situate on Table Mountain, in Tuolumne County, and on the 29th of the same month caused a record of their location, with the metes and bounds thereof, to be made in the office of the Recorder for the mining district in which the same was located.    Subsequently, about the 15th of January, 1855, the grantors of plaintiff located mining grounds immediately south of the defendant's claim, and

between defendant's claim on the north and claims previously located on the south, known as the Scraperville or Welsh Boys' claims; and thereafter, on the 28th November, 1855, caused records of such location, with assumed metes and bounds thereof, to be made at the office of the Recorder for the mining district.

There seems to have been no controversy at the trial as to the true southwest corner of defendant's and northwest corner of plaintiff's claims; this corner is admitted to be a white oak stump, which stump is the southwest corner of defendant's and northwest corner of plaintiff's claim.

About the 1st of January, 1855, defendant's grantors marked out the western line of their claim, and established and marked their northwest and southwest corners, the northwest corner being a large pine tree, and the southwest corner being a large white oak tree, (now a stump.)  On the following day, or a few days thereafter, they marked out their south, east, and north lines, and established their southeast and northeast corners, their northeast corner being a small pine tree, and their southeast corner being a mound of stones; the distance between defendant's northwest · and southwest corners and between their northeast and southeast corners, as measured at the time, and as by them recorded on the 29th January, 1855, being three thousand feet.

The plaintiff's claim, subsequently located about the 15th January, 1855, was located between the defendant's claim on the north and the Scraperville or Welsh Boys' claim on the south; and was  marked out by marking the northwest established corner of the Scraperville claim as their southwest corner, and the northeast corner of the Scraperville claim as their southeast corner, and marking the established southwest corner of defendant's claim as their northwest corner; and their northeast corner was intended to be made identical with the established southeast corner of defendant's claim; but not being able at the time to discover defendant's southeast corner, a notice was posted on a *nut pine* tree as plaintiff's northeast corner, stating that "that was the Maine

Boys' claim, bounded on the south by the Scraperville and on the north by the Boston claim."

No other or different location of plaintiff's claim was ever made or attempted, except that a month or two after this first location the party who made the same was shown the southeast corner of defendant's claim by defendant's company, the same being a pile of stones. He then made the same pile of stones plaintiff's northeast corner. But subsequently, in November, 1855, on making a record of its claim, plaintiff described its location by metes and bounds, without reference to any other claim, except the Welsh Boys' claim, and gave the distance from its southeast to its northeast corners, and from its northwest to its southwest corners, as one thousand seven hundred feet. The measurement of these lines was not made or attempted at the time the ground was located in January, 1855, nor does it appear that any measurement of these lines was made or attempted prior to the making of the record, or at any other time, until a short time before the commencement of this suit, except, in 1856, one Alfred Roberts, a member of plaintiff's company, measured the west and east lines of its claim, and found the west line to be from one thousand six hundred to one thousand eight hundred feet in length, and the east line to be five or six hundred feet in length.

The true location of the southeast corner of defendant's and northeast corner of plaintiff's claims appears to have been the only material point in controversy on the trial.

Witnesses, who made surveys of the respective claims a short time before the trial, testify to two piles of stones on the eastern brow of Table Mountain—one about six hundred and twenty-five feet north of the other. The plaintiff claims this north pile of stones as defendant's true southeast corner, and as its own true northeast corner; and defendant claims the south pile of stones as its own true southeast corner and plaintiff's true northeast corner. Starting from the oak stump on the west side of the mountain, which is agreed to be the true southwest corner of defendant's claim and the

northwest corner of plaintiff's, and running a direct line
from thence easterly to the most southerly pile of stones on
the east brow of the mountain, claimed by defendant as its
true southeast corner, the *locus in quo* of the alleged trespass
is entirely within the limits of the defendant's claim; and
by running a direct line easterly from the same oak stump
to the northerly pile of stones on the east brow of the moun-
tain, claimed by plaintiff as its true northeast corner, the
defendant has worked south of this line one hundred and
seventy-seven feet; and if this be the true dividing line
between plaintiff's and defendant's claims, defendant has
trespassed upon plaintiff's claim to the extent of running a
tunnel one hundred and seventy-seven feet upon and in its
ground.

There is no positive evidence as to the precise time when,
or by whom, either of the two piles of stones were erected
on the east brow of the mountain, and there is no evidence
tending to establish that plaintiff, or those under whom it
claims, ever erected either of those piles of stones, or ever
established any northeast corner of its claim, other than
the *nut pine* hereinbefore stated, and about two months there-
after making the pile of stones, pointed out by the "Boston
Boys" as their southeast corner, plaintiff's northeast corner.

There is no conflict in the evidence tending to establish
the fact that the southerly pile of stones claimed by defend-
ant as the southeast corner is the identical pile of stones
pointed out by the "Boston Boys" to the party locating the
"Maine Boys'" claim within two months after the first
attempt at location of the same, as hereinbefore stated, and
is the identical pile of stones which the same party then
made the "Maine Boys'" northeast corner.

Witness Atherton, called by defendant, is the only witness
who testifies as to the time and manner of locating plaintiff's
claim. He says: "I know plaintiff's and defendant's claims.
I located plaintiff's claim about the middle of January, 1855.
I found a vacant piece of ground between the Boston and
Scraperville, and went to find the southwest corner of Bos-

ton, and found it on a large white oak tree, spotted and written on it: 'Southwest corner of Boston Company.' I wrote on the same tree, with pencil, 'Northwest corner of Maine Boys' claim.' I then went and found northwest corner of Scraperville, and marked it, 'Southwest corner of Maine Boys' claim.' I then crossed over on the east side of the mountain, and found the northeast corner of the Scraperville, and marked it with pencil, 'Southeast corner of Maine Boys' claim.' I then went up to find the southeast corner of Boston Company's claim; did not find it, but wrote a notice and put it on a pine tree. The notice read, stating that was the Maine Boys' claim, bounded on the south by the Scraperville, and on the north by the Boston claim; I put it on a *nut pine;* the tree is there yet. I calculated I was near the southeast corner of the Boston claim. I wanted to get as near the line as I could; I did not intend to get over the line. * * * The Boston Company had been at work in their claim when I marked the Maine Boys' claims. I should judge they had been at work a week or so by the looks of the work. It had been located prior to the passage of the laws at Darow's. The southeast corner of the Boston claim was pointed out to me by the Boston Company a month or two after I took up the Maine Boys' claim, and I then made it Maine Boys' northeast corner. I pointed out the same rock pile to Wilson the other day. I became an owner in the Boston Company in December, 1855, and remained a member of the Boston Company seven years. I was a member of the Maine Boys' Company three or four years. There was nothing done in marking out lines in Maine Boys' except what I did. While I was a member of the Maine Boys' Company the recognized line was as I have stated. The oak tree on which I found the notice was always considered. the dividing line, and the rock pile pointed out to me by the Boston Company as their southeast corner. There never was any trouble about the claim till Alfred Roberts measured the front, (the Mormon Creek side,) and found we had one thousand six hundred to one thousand eight hundred

feet, and he then went over and measured the east side of the claim and found there was but five or six hundred feet. He thought we ought to have more ground; that was the first time there was any dispute about the lines. This was some time in 1856. I bought into the Boston Company before the commencement of the suit with the Twist Ranch Company, December 17th, 1855. At the time I bought into the Boston Company the entire bounds were pointed out to me by Dr. Sherburne and Bucket, the man I bought out. They pointed out the rock pile I pointed out to Wilson the other day as the southeast corner of the Boston claim, the white oak tree as the southwest corner, the large yellow pine standing a little below the ditch as the northwest corner, and a small pine standing back of the buildings on the Rosedale Ranch as the northeast corner. There was a notice, made from candle paper, nailed on the northeast corner; the tree is not standing now. I saw the stump recently, and a piece of the trunk is there with the nails in it, and pieces of candle paper under the heads of the nails. The tree was cut some time ago, and the trunk hung to the stump. I saw it the day of the survey by Cooper, and the day I pointed out the southerly corner to Mr. Wilson. The corners I pointed out to him are the same ones pointed out to me by Sherburne and Bucket, and the same ones I located. * * * * Roberts came in shortly after we took up the claims."

W. S. Cooper, a witness called by defendant, testified as follows: "I am County Surveyor; I surveyed defendant's claim July 15th, 1867; began at the northeast corner pointed out by F. B. Doten; it is a pine stump, about a foot in diameter; ran north fifty-three degrees thirty seconds west one thousand two hundred and fifty-seven feet to a large pine stump; thence south seventeen degrees west to a large oak stump two thousand nine hundred and seventy-five feet. * * * The oak stump was pointed out to me as the southwest corner by Mr. Atherton. I then ran south seventy-three degrees east two thousand eight hundred feet to a rock mound, southeast corner. This mound was pointed out to

me by Atherton as the southeast corner.    I then ran north twelve degrees west three thousand feet to the place of beginning.    I had not seen the records testified to by Daron, but had seen a copy.    The corners correspond exactly.    The distances are not exact, but very near.    The easterly line in the record corresponds exactly with my measurement.    The westerly line is recorded as three thousand feet; I make it two thousand nine hundred and seventy-five feet.    *    *    * The courses I have given are the magnetic courses.    *    *    * The entire underground works of defendant are within the limits I have described as having surveyed."

Thomas Morris, a witness called for the defendant, testified as follows:    "I have been an owner in Boston Company seven years this Fall; during all that time have known the southwest, the southeast and northeast corners.    I saw them pointed out to Cooper, and pointed them out myself.    Atherton showed them to me.    *    *    *    The corners Atherton pointed out to me seven years ago are the same that Cooper surveyed to."

There is no testimony in the record conflicting with or tending to impeach or rebut the foregoing testimony of Atherton, Cooper, and Morris, but much corroborative thereof, and all tends clearly to establish that the southerly stone pile is the true southeast corner of defendant's and northeast corner of plaintiff's claims, and, thus established, the *locus in quo* of the alleged trespass of defendant is entirely within the legitimate boundaries of its own claim, as originally located, and not on or within the plaintiff's claim; hence the verdict of the jury, " establishing the line as claimed by plaintiff," is not only unsupported by, but manifestly against the evidence, as found in the record.    We are at a loss to account for the verdict as rendered upon the evidence, except upon the theory that the jury were controlled in their action, not by the evidence upon the point as to where the original true southeast corner and southern boundary of the defendant's claim were, but by an instruc-

tion given by the Court at the request of plaintiff, and other
evidence tending to establish that plaintiff, some time in the
year 1856 or '57, sunk a shaft within the boundaries of
defendant's claim, without objection on the part of defend-
ant, and claimed the disputed ground as within its bound-
aries.  This instruction given by the Court, at request of
plaintiff, is as follows: "If the jury believe, from the evi-
dence, that plaintiff, or those under whom it claims, more
than five years prior to the commencement of this suit, in
good faith, and under a claim of right, entered into the pos-
session of said disputed ground, and have continued in
possession thereof, and have expended labor thereon (with
the knowledge of defendant or those under whom it claims,
it making no objection thereto) and that the defendant has
not forbidden its possession so acquired, then the plaintiff
is entitled to a verdict."

As an abstract proposition this instruction, as given, can-
not be sustained.  It fails to state the essential elements of
an estoppel *in pais*.  (*Boggs* v. *Merced Mining Co.*, 14 Cal.
367, 368; *Davis* v. *Davis*, 26 Cal. 39–42.)

. Again: there was no sufficient evidence in this case to
point such an instruction.  The plaintiff claims the ground
in controversy by virtue of its prior location and possession.
The evidence establishes that the defendant located and had
the possession of this ground before plaintiff located its claim
adjoining thereto.   The evidence further shows, upon the
point of actual *possessio pedis* of the disputed ground, that
the defendant was working on or very near, claiming the
same as within its boundaries, in 1856 or 1857; that while
defendant was so working on or very near this disputed
ground, both plaintiff and defendant claimed the same, and
plaintiff, while defendant was so working, sunk a shaft on
the ground.  The sinking of this shaft is the only work
plaintiff is shown ever to have performed upon the disputed
ground; and while sinking this shaft, plaintiff was informed
by defendant that it was working on defendant's ground.
The evidence tends strongly to establish that the boundary

line between plaintiff and defendant has been a question of dispute between the parties since 1856; hence the instruction asked by defendant and refused by the Court was pertinent and proper, after the instruction given at request of plaintiff, and should have been given.

Judgment and order reversed and cause remanded for new trial, and remittitur directed to issue forthwith.

SAWYER, C. J., concurring specially:

I do not see how the jury could have found the verdict they did unless they were misled by the instruction given at the plaintiff's request. The instruction is not admissible with reference to the Statute of Limitations; if for no other reason, because the plaintiff does not allege title under that statute. The allegations of the complaint are insufficient to show an adverse possession. Nor is the evidence such as to justify the instruction upon a question of estoppel, if the instruction was itself properly framed in that aspect. In either view it should have been refused. The instruction asked by defendant was, I think, properly refused. It does not appear to me to be relevant to the case as presented by the evidence, either alone or in connection with the instruction erroneously given. I concur in the judgment on the grounds indicated.